UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**WILLIE TINSLEY SMITH, #1136426**

    Petitioner,

v.                                                                      Case No. 2:21cv414

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Willie Tinsley Smith's ("Petitioner") *pro se* Amended Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 6, and Respondent Harold W. Clarke's ("Respondent") Motion to Dismiss, ECF No. 11. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 11, be **GRANTED**, and the Petition, ECF No. 6, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2019, the Circuit Court for the City of Hampton ("The Trial Court") convicted Petitioner, following a jury trial, of first-degree murder and statutory burglary while armed with a deadly weapon. ECF No. 25, attach. 1 at 2, 78. Petitioner was sentenced to serve two life sentences. ECF No. 6 at 1, ECF No. 13 at 1. On October 14, 2015, Petitioner's ex-girlfriend, A.W. was found in her home with blood and stab wounds, and paramedics pronounced her dead at the scene. ECF No. 25, attach. 1 at 79–80. As explained by the Court of Appeals, the evidence at trial demonstrated the following:

> Dr. Wendy Gunther performed the autopsy. She identified at least nineteen stab wounds in addition to many other "incised wounds" and determined that the cause of death was bleeding from multiple stab wounds. A.W. had defensive wounds on her right forearm and fingers. Through an x-ray of the body, the doctor discovered inside A.W.'s neck a serrated knife blade that had broken from its handle. She gave the blade to the police along with nail clippings from A.W.'s hands. She also found physical evidence on the body of manual strangulation and blunt force trauma.
>
> The police located appellant sleeping in his truck about a mile from his mother's house in York County about 5:00 a.m. on October 15, 2015, and arrested him. Appellant later complained that his right forearm had been scratched from being handcuffed. The location of the scratches was not consistent with the placement of the handcuffs. A small spot of blood was seen on the center console of his truck. Later DNA analysis eliminated A.W. as a contributor of that blood; analysis did not eliminate appellant and determined the probability of a random, unrelated person with the same profile leaving the blood on the center console to be 1 in approximately 7.2 billion, which represents the world population.
>
> The investigating police officers determined that entry into A.W.'s house had been made by breaking a window at the back of the townhouse. The window screen was loose, and a pane was broken near the window lock. There was some broken glass in the window track, which indicated that the window had been raised. No broken glass was found near the window on the inside of the room, but the officers found a plastic bag containing pieces of glass buried in the trash can in the kitchen, as well as pieces of glass along the side of the trash bag in the can.
>
> The officers recovered a knife block, which had one missing knife, at appellant's mother's house. The knives had the same brand name and markings as the knife blade found in A.W.'s neck. A piece of black plastic found at the crime

2

>scene was consistent with the handles of the knives in the block. A steak knife found at the bottom of the stairs behind a cardboard box at A.W.'s residence was not consistent with the knives in the knife block.
>
>DNA analysis of A.W.'s nail clippings established that appellant could not be eliminated as a contributor of the DNA found on the nail clippings from A.W.'s left hand. Appellant's DNA was not found on the other items recovered from the crime scene, but DNA of an unidentified third person was present on the back door security bar, a shirt from K.H.'s closet, and the handle of another knife that was found behind a box at the bottom of the stairs. A.W.'s DNA was identified on the knife handle.

ECF No. 25, attach. 1 at 80–81.

On October 15, 2019, Petitioner appealed his convictions to the Court of Appeals of Virginia. *Id.* at 2. On appeal, Petitioner argued two assignments of error. *Id.* at 40. First, Petitioner argued that the evidence at trial was insufficient to support a finding of guilty for either of his convictions. *Id.* at 2. Specifically, Petitioner argued that "the evidence was insufficient to prove that he murdered A.W. because no one saw him enter or leave her house, his DNA was not found on items at the house the perpetrator reasonably would have touched and DNA of an unidentified third person was present, no fingerprints were recovered, and he made no inculpatory statements." *Id.* at 81. Second, Petitioner argued that the Trial Court erred by excluding him from the courtroom when his trial commenced, because he "vigorously protest[ed] the court's refusal to appoint new counsel for him and grant a continuance." *Id.* at 82.

On May 20, 2020, the Court of Appeals of Virginia denied Petitioner's appeal. *Id.* at 78. The Court of Appeals rejected Petitioner's first claim, finding that:

>[T]he Commonwealth's evidence established that [Petitioner] had scratches on his arms that were not caused by being handcuffed, he was a contributor to the DNA found under A.W.'s nails, the broken knife blade found in A.W.'s neck was consistent with the knives found in a knife block at his mother's house and one of the knives was missing from the knife block, and his relationship with A.W. had soured, and in the weeks immediately preceding A.W.'s death, he believed she

3

> was seeing someone else. . . . In finding [Petitioner] guilty, the jury found that the Commonwealth's evidence was sufficient to prove [Petitioner] broke into A.W.'s house and stabbed her to death. . . . That finding was not plainly wrong, or without supporting evidence, and will not be disturbed on appeal.

ECF No. 25, attach. 1 at 78–82. Regarding Petitioner's second assignment of error, the Court of Appeals of Virginia found that:

> the trial judge warned appellant that there would be consequences if he continued to disrupt the trial. Appellant did not cease his obstreperous behavior, and the judge found him in contempt four times before ordering his removal from the courtroom. After a brief recess, the judge gave appellant another opportunity to return to the courtroom, but appellant refused to conduct himself appropriately and was again removed. After a short absence, appellant returned to the courtroom. He was present when the questioning of the venire began and for the remainder of the trial. We find that the trial court did not abuse its discretion in removing appellant temporarily from the courtroom until he ceased his obstreperous conduct.

ECF No. 25, attach. 1 at 82-86.

On June 29, 2020, Petitioner appealed to the Supreme Court of Virginia. ECF No. 25, attach. 2 at 2-36. On February 10, 2021, the Supreme Court of Virginia refused the petition for appeal. *Id.* at 39. Petitioner did not file a state habeas petition.

Petitioner filed an initial federal habeas petition on July 23, 2021. ECF No. 1. On October 27, 2021, Petitioner filed an Amended Petition. ECF No. 6. In the Amended Petition, Petitioner appears to raise several claims for relief. In Claim One, Petitioner alleges: "Evidence was left out of the transcript, my lawyer [k]new somebody on the jury I had a mistrial left out of the transcript." ECF No. 6 at 5. In support of Claim One[1], Petitioner states, "supporting the fact [that] evidence was left out of the transcript my lawyer [k]new somebody on the jury the judge ask[ed] her was it alright she said yes it should have been a mistrial."[2] ECF No. 6 at 7.

---

[1] Though Petitioner lists these supporting facts as ground two in his Amended Petition, it is clear through Petitioner's language that such facts are in support his claim in Claim One. *See* ECF No. 6 at 7.
[2] Petitioner makes vague references in the Amended Petition that the judge at his first trial knew the victim. ECF No. 6 at 14. However, Petitioner received a mistrial for that reason, and his convictions

4

Petitioner does not specifically identify a second claim for relief, but proffers the following statements which are distinct from Claim One: "I did not get a fair trial"; "my lawyer did not want to be on my case . . . she was not ready [for court] . . . she told me on [a] video visit that she want[ed] to get off my case"; "I had [to] call her to come see me in the Jail"; "I got railroad[ed] by the court of Hampton Va Circuit Court, they talk[ed] nasty to me"; "I could not argue at trial in front of the victim['s] family." ECF No. 6 at 13–14.

Respondent filed a Motion to Dismiss, a Rule 5 Answer, a Brief in Support of the Motion to Dismiss, and *Roseboro* Notice. ECF Nos. 11–14. Petitioner did not file a response to Respondent's Motion. Therefore, the Petition and Motion to Dismiss are now ripe for recommended disposition.

Following Respondent's filing, Petitioner filed five submissions which do not respond to the motion to dismiss but rather appear to supplement the instant Petition. *See* ECF Nos. 15-20. In his submissions, Petitioner makes vague references to case law regarding his Sixth Amendment right to counsel and ineffective assistance of counsel. ECF Nos. 16-17, 19. Petitioner also attaches various correspondence from the Virginia State Bar, and pages from his direct appeal. ECF No. 15, 18.

In deference to Petitioner's pro se status, the court will interpret Petitioner's submission to raise two additional grounds for habeas relief—violation of Petitioner's Sixth Amendment right to counsel and ineffective assistance of counsel. Based on the foregoing submissions, the Court interprets the Petition to raise the following claims for relief:

1. Claim 1: The second trial should have ended in a mistrial because his trial counsel knew someone on the jury. ECF Nos. 6 at 7.

2. Claim 2: The Trial Court violated Petitioner's Sixth Amendment rights because

---

arise out of his trial subsequent to the mistrial. ECF No. 15 at 8. Because Petitioner's convictions did not arise out of the trial in which his judge knew the victim, they are not relevant here.

5

Petitioner was not afforded a new attorney when he requested one. ECF No. 6 at 13-14; ECF No. 16 at 3; ECF No. 19 at 1.

3. Claim 3: Trial counsel was ineffective because:
    a. Trial counsel was not "ready" for trial. ECF No. 6 at 13; ECF No. 19 at 1.
    b. Trial counsel wanted to be removed from his case. ECF No. 6 at 14.
    c. Respondent had to call trial counsel to see him in jail. ECF No. 6 at 13.

## II. DISCUSSION

A. Exhaustion and Procedural Default in a Federal Habeas Petition

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and whether Petitioner has procedurally defaulted on his claims.

*1. Exhaustion*

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief in order to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in

6

Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Virginia Dep't of Corr.*, No. 1:14CV1581, 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), appeal dismissed, 669 F. App'x 160 (4th Cir. 2016) (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

2. *Procedural Default.*

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). *See also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (internal citations omitted). As the Supreme Court has observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default

7

be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Under these circumstances, the claim is considered simultaneously exhausted and procedurally defaulted so long as "it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Importantly, however, if "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," a federal court may not review the simultaneously exhausted and procedurally defaulted claim. *Id.* (quoting *Gray*, 518 U.S. at 162).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). *See also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of

such review") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). *See also Davila v. Davis*, 137 S. Ct. 2058, 2065, 198 L. Ed. 2d 603 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006) (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, No. 1:15CV781, 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), cert. denied, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

### B. Claims 1, 2, and 3 in the Petition are simultaneously exhausted and procedurally defaulted on adequate and independent state-law grounds.

Petitioner's claims in his federal habeas petition are simultaneously exhausted and procedurally defaulted because he failed to present them to the Supreme Court of Virginia on either direct appeal or through a state habeas petition. If Petitioner were to present his claims in a state habeas petition to the Supreme Court of Virginia, it would be procedurally barred as untimely under Virginia Code § 8.01-654(A)(2). Virginia Code § 8.01-654(A)(2) constitutes adequate and independent state-law grounds for decision. *Sparrow*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006) (Va. Code § 8.01-654(A)(2) is an independent and adequate state procedural

rule). Accordingly, all of Petitioner's claims are simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

Petitioner may overcome procedural default by "showing [] cause and prejudice or a fundamental miscarriage of justice due to [his] actual innocence." *Silk*, 2009 WL 742552, at *3 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998), and *Harris v. Reed*, 489 U.S. 255, 262 (1989)). Petitioner does not assert that he is actually innocent or present any evidence of actual innocence. Absent a sufficient assertion of actual innocence, or evidence supporting actual innocence, Petitioner cannot demonstrate a fundamental miscarriage of justice. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the *new evidence*.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (emphasis added).

"[C]ause" refers to "some objective factor external to the defense [that] impeded counsel's [or the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The only explanation Petitioner offers as to why his claims were not raised on direct appeal is because he did not attend the oral argument and his attorney made the argument without him present. ECF No. 6 at 6-9. However, Petitioner offers no explanation why he did not pursue a further appeal with the Supreme Court of Virginia or file a state habeas petition. Petitioner fails to show sufficient cause that would justify his procedural default. Therefore, Petitioner is unable to overcome procedural default because he does not present argument that some objective factor external to the defense impeded his efforts to comply with the rule. *Accord Strickler*, 527 U.S. at 283 n.24. Absent cause, a prejudice analysis is unnecessary. *See Kornahrens v. Evatt*, 66 F.3d

1350, 1359 (4th Cir. 1995) (noting that courts should not consider the issue of prejudice absent cause to avoid the risk of reaching an alternative holding). Accordingly, the undersigned **FINDS** that Claims 1, 2, and 3 are simultaneously exhausted and procedurally default, and thus, should be dismissed.

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 11, be **GRANTED**, and the Petition, ECF No. 6, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985);

*United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

                                                        /s/
                                     Lawrence R. Leonard
                                     United States Magistrate Judge

                                       Lawrence R. Leonard
                                     United States Magistrate Judge

Norfolk, Virginia
August 8, 2022